IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEQUEL CAPITAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 07-CV-2642 |
| ) | |
| WILLIAM PEARSON, ANTHONY ) | Judge Robert M. Dow, Jr. |
| GRAFFIA, SR., and ANTHONY GRAFFIA, JR., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Anthony Graffia, Sr., and Anthony Graffia, Jr., filed a motion for summary judgment [134] as to Counts III(A) and III(B) of Plaintiff Sequel's second amended complaint, which allege violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO").[1] For the reasons below, the Court grants in part and denies in part Defendants' motion [134].

---

[1] Plaintiff's second amended complaint asserts two separate RICO counts against Defendants, both of which are entitled "Count III." In the interest of clarity, Defendants' summary judgment motion re-designates the counts as "Count III(A)" and "Count III(B)," and the Court adopts the new designation for purposes of this opinion.

**I.  Background**

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements [136, 139, 140], as well as from the parties' briefing on the instant motion [see 134, 138, 142].[2]

This case originated with a $2 million loan ("the Sequel loan") that Plaintiff Sequel Capital, LLC ("Plaintiff") issued in 2002 to William Pearson ("Pearson") on behalf of Argus Industries, Inc. ("Argus"), a manufacturer and distributor of cameras. Pearson, who was the president of Argus, personally guaranteed the loan and secured it by granting Plaintiff a security interest in some of Argus's cameras. Plaintiff perfected its security interest and recorded a UCC-1 form. In addition to the Sequel loan, Argus obtained international letters of credit from J.P. Morgan Chase Bank & Co. ("Chase"). Plaintiff alleges that it entered into an intercreditor agreement with Chase pursuant to which both entities acknowledged Plaintiff's priority position over the Argus cameras.

---

[2] Local Rule 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See N.D. Ill. L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit has confirmed repeatedly that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995 (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g.*, *Malec*, 191 F.R.D at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See N.D. Ill. L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec*, 91 F.R.D. at 584. The requirements for a response under L.R. 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). The Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does no more than negate its opponent's fact statement. In other words, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact, and the Court will disregard such facts. See, *e.g., Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

Argus defaulted on its loans from Plaintiff and Chase in the fall of 2002. In the spring of 2003, Chase introduced Pearson to Anthony Graffia, Sr., and Anthony Graffia, Jr. (collectively, "Defendants"), who were employees of the Hartford Computer Group ("Hartford"). Defendants advised Pearson (on behalf of Argus) to enter into a pre-packaged assignment of certain Argus inventory (including cameras) to Hartford for the benefit of Argus's creditors. Accordingly, in June of 2003, Pearson assigned Argus's receivables and inventory (including Argus's cameras) to a Trustee-Assignee. The Trustee-Assignee then entered into a contract of sale with Hartford, pursuant to which Hartford agreed to buy the Argus assets for $2.5 million. Hartford also agreed to tender $200,000 as bond within three days of signing the agreement. Hartford entered into a collection agreement to collect Argus's existing receivables on a percentage fee basis, according to which Hartford would receive a thirty percent collection fee.

An auction of the Argus assets was scheduled to take place on July 15, 2003. Plaintiff alleges that Hartford had not tendered the required bond by that time. Plaintiff further alleges that it had expressed some initial interest in purchasing the Argus assets at auction but Defendants and the Trustee-Assignee persuaded it to abstain from bidding and to support Hartford's purchase of the assets instead. Plaintiff acquiesced, and on July 15, 2003, John T. Iwanski, the chief financial operator of Sequel, and Graffia, Jr., as president of Hartford, signed a letter ("the July 2003 contract"), set forth on Sequel letterhead, that stated in pertinent part:

> This letter shall confirm our agreement regarding Argus Industries, Inc.'s ("Argus") Assignment for the Benefit of Creditors. *Sequel Capital, LLC ("Sequel") being a secured creditor of Argus shall release the Argus assets to which it has a security interest* an[d] shall assist Hartford Computer Group, Inc. ("Hartford") to become the successful bidder at the auction of Argus' assets held by the Argus Trustee-Assignee to be completed on July 15, 2003. In the event Hartford is the successful bidder at the auction and purchases the Argus assets, *as consideration for the release* and assignment of Sequel, Hartford agrees as follows:

3

1. Hartford (subject to the condition that it is able to reach a fee agreement with the attorney representing Argus in the Argus v Office Max litigation) agrees to include the Office Max receivable as a receivable it will attempt to collect under the terms of its Collection Agreement with the Trustee-Assignee.
2. *Hartford shall defer its 30% fee on all Argus inventory sold and receivables collected until Sequel is repaid the secured debt it is owed from Argus.* As of June 30, 2003 the amount of the secured debt is $2,828.007.70 (plus allowed sums paid as agreed to at the assignee sale) with additional interest of $852.22 per day until the above amount is reduced.
3. Hartford agrees to pay Sequel 30% of the Gross Contribution Margin earned by Hartford from the sale of Argus products, excluding Argus existing inventory, until Sequel has received payment both from The Argus Estate and from such margin payments in the full amount of the above debt owed to Sequel and all accumulated interest. *Upon Sequel's receipt of such full payment, Sequel agrees to assign to Hartford the full amount of the remaining debt owed by Argus to Sequel together with Sequel's security interest in the Argus accounts receivables* so as to make Hartford a secured creditor of Argus in the amount paid by Hartford to Sequel.

[134-5 (emphasis added).]

Hartford was the sole bidder on the Argus assets at the July 15, 2003, auction. Hartford purchased the Argus assets at auction for $1.3 million (slightly more than half of the $2.5 million price to which it agreed in the contract of sale). The Trustee-Assignee immediately tendered the $1.3 million purchase price to Chase. Plaintiff did not receive any of the sale proceeds, nor has it been repaid the secured debt in the years since the auction.

Plaintiff also alleges the following: After Hartford bought the Argus assets from the Trustee-Assignee on July 15, 2003, retailers returned to Hartford an unspecified number of Argus cameras ("the used Argus cameras"). In addition to lawfully selling the Argus cameras that Hartford bought at auction, Hartford unlawfully repackaged and resold as new the used Argus cameras that the retailers had returned. Hartford received approximately $1.69 million in exchange for selling the used Argus cameras as new. In March 2005, Hartford fraudulently

4

transferred the Argus assets to Impero, another enterprise owned, operated, and managed by Defendants. Impero illegally resold used Argus cameras as new between 2005 and 2006. Plaintiff did not learn that Defendants were repackaging and reselling as new the used Argus cameras until the late fall of 2006. Defendants informed Sequel Principal and Owner Havey Kinzelberg after the July 15 auction that returned inventory forced Defendants to incur additional expenses, that accounts receivables were significantly overstated, and that secured creditors would never receive full recovery. Plaintiff contends that these statements were misrepresentations that were intended to induce Plaintiff's agreement on December 31, 2003, to a modification of the July 15, 2003 contract,[3] and to an October 26, 2004 release by Plaintiff of all claims and actions against Hartford arising out of the December 31, 2003 modification agreement. Plaintiff suggests that Defendants' misrepresentations and the agreements that they engendered permitted Defendants to retain "pure profit" of the used cameras that Defendants allegedly resold as new while telling Plaintiff and other creditors that they could not be repaid because "concessions had to be made." [138, at 7.]

Neither Defendants' statement of facts nor its briefs in support of its motion for summary judgment allege any facts concerning whether Defendants received used Argus cameras after July 15, 2003, or whether Defendants resold any such cameras. Indeed, Defendants' briefing does not so much as mention the returned merchandise.

Plaintiff filed a lawsuit asserting, *inter alia*, two RICO counts against Defendants based on alleged violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (815 ILCS 505/1 *et seq.*), mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and transportation of stolen property or property obtained by fraud (18

---

[3] The modification agreement provides that Hartford will pay Plaintiff a fixed sum per month (rather than thirty percent of the gross contribution margin earned by Hartford for the sale of Argus assets) until Plaintiff receives the total amount owed, plus interest.

U.S.C. § 2314) statutes. Specifically, in Count III(A), Plaintiff alleges that Defendants violated 18 U.S.C. § 1962(c) of RICO by fraudulently reselling as new certain used Argus cameras, failing to account for returned inventory, and failing to remit proceeds from the returned cameras. In Count III(B), Plaintiff alleges that Defendants violated 18 U.S.C. § 1962(d) of RICO by conspiring to commit the acts alleged in Count III(A). Plaintiff alleges that as a result of Defendants' actions, Plaintiff suffered deprivation of property in which it retains a security interest.

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To survive a motion for summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. A mere showing that there is "some metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There must be more than a "mere existence of a scintilla of evidence in support of the [non-moving party's] position" that a jury could reasonably find in the non-moving party's favor. *Anderson*, 477 U.S. at 252. When the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial," summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the burden of establishing that the non-moving party has not presented any genuine issue of material fact. See *Celotex*, 477 U.S. at 323. The Court must then "construe the facts and draw all reasonable inferences in the light most favorable to a nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

## III. Analysis

Under Section 1962(c) of RICO, as codified, it is "unlawful for any person through a pattern of racketeering activity or through collection of any unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(c). It also is "unlawful for any person to conspire to violate any of the provisions of subsection * * * (c) of [section 1962]." 18 U.S.C. § 1962(d). Section 1964(c) establishes a civil RICO cause of action:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Thus, under § 1964(c), a plaintiff asserting a civil RICO claim must show (1) an "injur[y] in [its] business or property" (2) "by reason of" (3) the defendant's "violation of section 1962." See *id.*; see also *RWB Servs., LLC, v. Hartford Computer Group, Inc.*, 539 F.3d 681, 685 (7th Cir. 2008) (discussing pleading requirements of a civil RICO cause of action for purposes of a motion to dismiss).

Defendants argue that summary judgment on Plaintiff's RICO claims is warranted because no reasonable jury could find on the evidence presented that Plaintiff was injured as a result of Defendants' alleged violation. As Defendants note, Plaintiffs' RICO claims are

predicated upon the selling of property – the Argus cameras – in which Plaintiff claims to have a security interest. However, Defendants contend that Plaintiff unconditionally released its security interest in the Argus cameras in the July 15, 2003 agreement with Hartford. Defendants maintain that because Plaintiff released its security interest in the cameras, Plaintiff could not have been deprived of any of its property as a result of Defendants' actions, and thus the RICO claims must fail.

Defendants' argument rests on two operative statements of the July 2003 contract[4]: (1) the statement in the opening paragraph that "Sequel Capital, LLC ('Sequel') being a secured creditor of Argus *shall release the Argus assets* to which it has a security interest;" and (2) the statement in the third numbered paragraph that provides that "[u]pon Sequel's receipt of * * * full payment, Sequel agrees to *assign* to Hartford * * * Sequel's security interest in the Argus *accounts receivables* so as to make Hartford a secured creditor of Argus in the amount paid by Hartford to Sequel." [134-5 (emphasis added).] According to Defendants, the first statement released Plaintiff's secured interest in the Argus "assets" that Hartford intended to purchase from the Trustee-Assignee at auction on July 15. The second statement provides that Plaintiff retained its secured interest in the Argus accounts receivable that it could assign at a later date. In other words, the second statement clarifies that the "assets" to be released *per* the first statement pertain exclusively to the Argus cameras and not to the accounts receivable. Defendants reason that this interpretation is sensible because, absent release of Plaintiff's interest in the Argus cameras, the cameras would have been under encumbered title, thus greatly complicating Hartford's ability to sell them – and, of course, selling the cameras to repay Argus's debt was the very purpose of Hartford's involvement with Argus and Plaintiff in the first place.

---

[4] As an initial matter, the Court observes that the document setting forth the parties' agreement consists of a single page and thus is unusually sparse given that it dealt with, at a minimum, more than $1 million in assets and a total debt of approximately $3 million.

8

Plaintiff makes two arguments in response. First, Plaintiff argues that the July 2003 contract conditions Plaintiff's release of the Argus cameras that Hartford bought at auction upon full payment by Hartford of the debt that Argus owed to Plaintiff. Plaintiff contends that because Defendants have yet to repay Plaintiff for the Argus debt, a condition precedent to the release has not been met, and Plaintiff thus retains to this day its security interest in the Argus cameras.

Plaintiff's first argument is not persuasive. As both parties agree, under general principles of contract interpretation, a contract must be read as a whole, and isolated clauses may not be read out of context in construing the document. See *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010). A court must give meaning and effect to each contract provision, as it is presumed that each provision was intended to serve a purpose. See *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 713 (7th Cir. 1993). Under a plain reading of the contract, Plaintiff released any secured interest it had in the Argus cameras that Hartford purchased at the July 15, 2003 auction. The contract does not fix this release upon satisfaction of any conditions precedent; it merely states that Plaintiff "shall release the Argus assets to which it has a security interest" in consideration for Hartford's payment of the Argus debt once the cameras were sold. Notably, the first numbered paragraph of the contract explicitly establishes certain conditions precedent for other contractual obligations [see 134-5, at ¶ 1, and *supra* at 3], thereby demonstrating that the parties understood how to establish conditions precedent and included such provisions when they wished to do so. That they did not do so in regard to Plaintiff's release of its security interest in the Argus cameras supports the conclusion that the release was unconditional at least as to the cameras that Hartford sought to purchase at auction on July 15. And, as the third numbered paragraph of the contract makes clear, Plaintiffs did retain a security interest in certain Argus accounts receivable. Thus, reading

9

the pertinent sections of the contract together, the contract provides that Plaintiff released its security interest in the Argus cameras for sale at auction and retained its interest in the Argus accounts receivable.

As Defendants point out, common sense also supports this construction. Hartford's ability to achieve the goal of selling the cameras for the benefit of creditors (including Plaintiff) would have been undermined if Hartford could not represent to potential buyers that Plaintiff had released its previously recorded security interest in the cameras. Plaintiff agreed in the July 2003 contract to support Hartford's bid at auction for that very purpose. It follows that the parties sensibly would have agreed that Plaintiff would release its security interest in the cameras, which Hartford intended to acquire (with Plaintiff's knowledge and at least tacit support) at the auction so that Hartford could later sell them more easily.

Plaintiff's second argument, although far from clear, appears to rest on a distinction between the Argus cameras that Hartford bought at auction and the used Argus cameras that retailers returned to Hartford after the auction. For example, Plaintiff's second amended complaint distinguishes between the so-styled "Old Argus Assets" (including cameras and accounts receivable) that Hartford bought at auction and the so-styled "Sequel cameras" that Hartford received from retailers after the auction. [See 134-2, at ¶¶ 13, 35, 43, 44.] Plaintiff uses the same terms in its response to Defendants' motion for summary judgment and corresponding statements of facts. [See 138, at 4; 139, at ¶ 11; 140, at ¶ 11.] In drawing this distinction, Plaintiff suggests that, irrespective of whether it retains or released its interest in the cameras that Hartford bought at auction, it has an interest in the used Argus cameras that Hartford acquired from retailers after the auction. And, it bears repeating, the used Argus

cameras are those that (1) Plaintiff alleges Defendants illegally resold as new and (2) form the basis of Plaintiffs' RICO claims.

Plaintiff has provided more than a "scintilla of evidence" to support its position as to the "Sequel cameras" that Hartford acquired after the auction. See *Anderson*, 477 U.S. at 252. Read in context and as a whole, the July 2003 contract concerns only the Argus cameras that were to be sold at auction on July 15 and the accounts receivables created by the sale of those particular cameras. The contract is silent as to the status of any previously sold cameras that retailers might later return to Hartford, and no intent to dispose of any interests in those cameras can be gleaned from the language, structure, context, or purpose of the contract. Furthermore, as Defendants concede, Plaintiff retained its security interest in the Argus accounts receivable under the July 2003 contract. Given that the retailers returned the used Argus cameras to Hartford in lieu of paying the amount owed to the Argus accounts receivable, it is arguable (although the Court need not decide at this juncture) that the third numbered paragraph of the July 2003 contract preserves Plaintiff's interest in the used Argus cameras returned by retailers after the auction. Finally, and most notably given that this summary judgment motion calls upon the Court determine whether the parties dispute material facts in the case, Defendants do not make any allegations or even so much as mention the used Argus cameras at the heart of Plaintiffs' RICO claims. Defendants thus have not put forward any evidence at the summary judgment stage to counter Plaintiff's assertion that "Defendants never told Sequel, and Sequel did not know until at least January 2006, that Defendants received tens of thousands of returned cameras including Sequel cameras that Defendants repackaged and illegally resold as new." [140, at 5 (Pl. LR 56.1 statement of additional material facts).] And following from that, the Court has no factual basis from which to consider, much less determine, whether the parties intended to address in any way

in the July 15, 2003 agreement the "Sequel cameras" that later were returned to Hartford – as opposed to the "Old Argus" cameras that Hartford clearly obtained at the July 15, 2003 auction.

The Court concludes that a genuine issue of material fact – namely, whether Plaintiff retained a security interest in the used Argus cameras that retailers returned to Hartford after July 15, 2003 – exists with respect to Plaintiffs' RICO claims. The Court therefore denies Defendants' summary judgment motion to the extent that it asserts that Plaintiff released its security interest in the used Argus cameras that were not purchased by Hartford at auction but merely returned to Hartford by retailers after the auction.

## IV. Conclusion

For the reasons stated above, the Court grants in part Defendants' summary judgment motion [134] with respect to the issue of Plaintiff's security interest in the Argus cameras that Hartford purchased at auction on July 15, and denies in part the motion with respect to the issue of Plaintiff's security interest (or lack thereof) in the used Argus cameras that retailers returned to Hartford after July 15, 2003.

Dated:  March 29, 2011

                                        Robert M. Dow, Jr.
                                        United States District Judge