IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEQUEL CAPITAL, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | No. 07-cv-2642 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| WILLIAM PEARSON, ANTHONY GRAFFIA, SR., and ANTHONY GRAFFIA, JR., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| WILLIAM PEARSON and ARGUS INDUSTRIES, INC., | ) ) ) | |
| Third Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| HARTFORD COMPUTER CORP., an Illinois corporation, ANTHONY GRAFFIA, JR., ANTHONY GRAFFIA, SR., RALLY CAPITAL SERVICES, LLC, an Illinois limited liability company, JAMES ZEC, a deceased individual, individually and as Assignee-Trustee of Argus Industries, Inc., HOWARD SAMUELS, an individual, in his individual capacity and as Assignee-Trustee of Argus Industries, Inc., and IMPERO ELECTRONICS, INC., an Illinois corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Third Party Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Third Party Defendant Rally Capital Services' ("Rally" or "Third Party Defendant") motion for summary judgment [171] on Count I of Third Party Plaintiff William Pearson's ("Pearson") and Argus Industries' ("Argus") (collectively, "Third Party

Plaintiffs") Fourth Amended Third Party Complaint. For the following reasons, the motion [171] is granted.

## I. Background

### A. Procedural History

On September 15, 2010, Third Party Defendant filed its initial motion to dismiss all of Third Party Plaintiffs' claims [75]. The Court granted this motion in part [144], ruling that while there was insufficient evidence under the Fed. R. Civ. P. 9(b) heightened pleading requirements to support Third Party Plaintiffs' allegations of a sham auction and fraud prior to the actual sale, the allegations of post-sale conduct were sufficient to state a claim for breach of fiduciary duty [144 at 17-18].

On January 25, 2011, Third Party Defendant filed a motion for summary judgment on Third Party Plaintiffs' remaining claims [171]. After Third Party Plaintiffs failed to reply to this motion by March 7, 2011, Third Party Defendant filed a motion for decision with respect to the motion for summary judgment [179]. Third Party Defendant took the position that Third Party Plaintiffs' failure to respond to the summary judgment motion within the time period provided by the Federal Rules should be deemed a forfeiture of the opportunity to respond and the Court should proceed to decision on the motion without the benefit of a brief from Third Party Plaintiffs.

The Court rejected that contention and directed the parties to submit a joint status report with a proposed schedule for any discovery required by Third Party Plaintiffs prior to responding to Third Party Defendant's summary judgment motion. The parties submitted an agreed schedule pursuant to which Third Party Plaintiffs would provide their response by May 27, 2011.

Third Party Plaintiffs failed to meet this deadline. It was not until June 17, 2011 that Third Party Plaintiffs filed a motion requesting an extension [188], claiming that they failed to meet the deadline because counsel had been preparing for an oral argument and the client was behind on payment. The Court denied the motion [191], noting that Third Party Plaintiff already had been granted several extensions over the course of this litigation and finding that Third Party Plaintiffs' excuses for not seeking the extension until weeks after missing the deadline were not compelling. Thus, in deciding whether to grant summary judgment, the Court considers only Third Party Defendant's initial motion for summary judgment [171] and Third Party Defendant's reply in support of its motion [186].

### B. Factual Background

Third Party Plaintiff Argus Industries, Inc. was an Illinois corporation that manufactured, imported and distributed digital cameras. Third Party Plaintiff William Pearson served as president and sole owner of Argus. In 2002, Third Party Plaintiff Argus obtained several loans, including $3,000,000 from Sequel Capital, LLC ("Sequel") and $1,300,000 from J.P. Morgan Chase & Co. ("Chase"). Both loans were secured by a security interest in a designated portion of Argus' camera inventory. Chase and Sequel agreed that Sequel had a priority position over Chase with respect to Argus' inventory [144 at 3]. In November 2002, after Office Max cancelled a camera order, Argus was forced to default on its loans with Chase and Sequel. Chase then sought immediate repayment from Argus, but Argus lacked the funds to pay [144 at 3].

In May 2003, a representative from Chase introduced Pearson to Anthony Graffia, Sr. and Anthony Graffia, Jr. ("the Graffias"), who claimed that their company, Hartford Computer Group, Inc. ("Hartford"), had sufficient funds to float Argus' need for capital to repay its loans

[144 at 3]. Through Chase and the Graffias, Pearson was introduced to James Zec and Howard Samuels of Rally Capital ("the Rally Defendants"), who emphasized their company's experience as a trustee of distressed business [144 at 4]. The Rally Defendants initiated discussion of the possibility that Hartford would acquire Argus' assets, and then Rally would use the proceeds from this assignment to pay back Argus' creditors [144 at 4].

As a result of this discussion, on June 18, 2003 Argus and Zec entered into a Trust Agreement and Assignment for the benefit of creditors [173 at 2]. Under this agreement, Zec was to serve as assignee/trustee of Argus' assets [144 at 4]. On June 27, 2003, Zec and Hartford entered into an Agreement and Bill of Sale, under which Hartford agreed to purchase, subject to competitive bidding, Argus' assets [173 at 2]. Zec and Hartford also entered into a Collection Agreement, whereby if Hartford was the successful bidder it would be responsible for collecting all but two of Argus' accounts receivable (excluding a receivable from OfficeMax that was the subject of an ongoing lawsuit and a receivable from Walmart/WIP Marketing/Lancelot PO Financings) [173 at 3]. However, on July 15, 2003, after undertaking due diligence, Hartford took the position that the value of Argus' assets was substantially less than the sale price previously agreed upon [173 at 3]. As a result of this revelation, Zec agreed, after obtaining the permission of Argus' creditors, to sell the assets to Hartford at a substantially reduced price [173 at 3]. On July 15, 2003, Sequel and Hartford also reached an agreement, under which Hartford agreed to attempt to collect the OfficeMax receivable that was the subject of ongoing litigation [173 at 3].

In the months following the Argus sale, Zec's health worsened and eventually Samuels agreed to become the Acting Assignee for Argus [173 at 4]. It also became apparent that Argus' Accounts Receivable had been substantially overstated, to the point where Sequel might not be

able to fully recover the funds it was owed [173 at 4]. As a result of that development, in fall of 2003, Harvey Kinzelberg ("Kinzelberg"), the principal of Sequel, requested that Samuels dramatically reduce his involvement, in favor of saving administrative costs by allowing Hartford and Sequel to communicate directly with regards to the sale of Argus' inventory and collection of Accounts Receivable [173 at 4]. This agreement effectively placed Sequel in control of the collection of the Accounts Receivable [173 at 5]. The overstatement of the Accounts Receivable also prompted an additional agreement between the parties on December 31, 2003. Under that agreement, Samuels formally acknowledged that he would not be paid by Hartford, as provided under the sale agreement, and that the unsecured creditors would not obtain any recovery [173 at 5-6]. Subsequently, Sequel demanded that Samuels pay them substantially all of the remaining funds that resulting from the Argus Assignment that he had under his control—a total of $93,000 [173 at 6].

In June 2004, the OfficeMax litigation settled. Pursuant to the July 15, 2003 agreement, Hartford exercised control over the settlement [173 at 6]. Finally, in October 2004, Hartford and Sequel entered into an Assignment and General Release, under which Sequel released Hartford from its obligations, including the $2,828,007.70 it was owed, in exchange for an immediate payment of $505,000.00.

## II.    Analysis

### A.    Legal Standard on Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether there is a genuine issue of fact, the Court "must construe the facts

and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

Because Third Party Plaintiffs have failed to controvert Third Party Defendant's statement of facts [172], the Court deems those facts admitted so far as they are supported by admissible record evidence.[1] See Local Rule ("L.R.") 56.1(b)(3)(C); *Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1102 (7th Cir. 1990).

---

[1] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583–85 (N.D. Ill. 2000). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. L.R. 56.1(b)(3)(C) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

### B. Breach of Fiduciary Duty Claim

As a result of the Court's September 30, 2010 decision [144], the only issue to be decided in this motion for summary judgment is whether Third Party Defendant breached its fiduciary duty through Samuels' decisions as acting Assignee following the July 15, 2002 sale of Argus' assets to Hartford [173 at 7]. Specifically, in the Fourth Amended Third Party Complaint, Third Party Plaintiffs claim that Samuels breached his fiduciary duty by (1) "failing to independently determine whether the claims of Hartford regarding inventory and receivables were true," (2) "terminating the collection agreement with Hartford before all creditors' claims were satisfied," and (3) "compromising the OfficeMax lawsuit without justification."

Under Illinois law, to establish a claim for breach of fiduciary duty, the plaintiff must establish (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately resulting from that breach. *Autotech Tech. Ltd. P'ship v. Automationdirect.com,* 471 F.3d 745, 748 (7th Cir. 2006). In this case, a fiduciary duty between Samuels (acting on behalf of Rally) and Argus was established when Samuels became acting assignee/trustee, taking over for Zec. However, because Third Party Plaintiffs have failed to present evidence establishing a breach of that duty, there is no genuine issue of material fact with respect to that element, and thus summary judgment in favor of Third Party Defendants is appropriate.

---

The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).

Under the Illinois Commercial Code, 810 ILCS 5/9-610(a), "after default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation of processing." Furthermore, 810 ILCS 5/9-601 provides that additionally, the secured party has those rights "provided by agreement of the parties." In this case, Paragraph 7.2(B) of the Loan Agreement between the parties states that "Lender may enter with or without process of law and without breach of the peace, any premises where the Collateral is or may be located, and may seize or remove the Collateral from said premises and/or remain upon said premises and use the same for the purpose of collecting, preparing and disposing of the Collateral."

These portions of the Illinois Commercial Code and Loan Agreement provided that Sequel, as the secured creditor, had the right to exercise exclusive control over the Argus assets, including the Accounts Receivable, which functioned as collateral for the money it was owed. Sequel exercised that right in the Fall of 2003, when Kinzelberg requested that Samuels dramatically reduce his role and effectively place Sequel in charge of collecting Accounts Receivable. Once Sequel had exercised its right, and Samuels had been removed from control, Samuels was no longer in a position where he could reasonably undertake the duties that Third Party Plaintiffs claim he failed to perform – including determining whether Hartford's claims regarding inventory and receivables were true, negotiating with other unsecured creditors, and controlling the OfficeMax litigation. In fact, under the Illinois Commercial Code and the Loan Agreement, Samuels was required to relinquish this control to Sequel, whose claim over the Argus assets had priority. In these circumstances, neither Samuels (serving as acting Assignee) nor Rally (on whose behalf Samuels acted) could have breached any fiduciary duty to Argus's creditors.

## III. Conclusion

For the foregoing reasons, Third Party Defendant's motion for summary judgment on Count I of Third Party Plaintiffs' Fourth Amended Third Party Complaint [171] is granted.

Dated: September 21, 2011 	 _____

	 Robert M. Dow, Jr.
	 United States District Judge