# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SEQUEL CAPITAL, LLC, an Illinois limited liability company | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07-cv-2642 |
| WILLIAM PEARSON, ANTHONY GRAFFIA, SR., and ANTHONY GRAFFIA, JR., | ) ) ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sequel Capital, LLC, filed a second amended complaint against Defendants Anthony Graffia, Sr., and Anthony Graffia, Jr., alleging common law fraud and violations of the federal Racketeering Influenced and Corrupt Organizations Act (RICO).[1] Before the Court is the Graffias' second motion for summary judgment [198], this time as to all counts against them. For the reasons stated below, the motion [198] is granted. Furthermore, because granting the motion extinguishes the sole basis for federal subject matter jurisdiction, the case will be remanded to the Circuit Court of Cook County, Illinois.

---

[1] The second amended complaint also alleges a state law claim against Defendant William Pearson, which is not at issue here.

## I. Background[2]

The Court's ruling on the Graffias' first motion for summary judgment contains many factual findings that need not be detailed here. [See 183.] To summarize, in 2002, Sequel loaned $3 million to Argus Industries, Inc., a manufacturer and distributor of cameras. [183 at 2, 230 at ¶ 6.] William Pearson, the president of Argus, personally guaranteed the loan and secured it by granting Sequel a security interest in some of Argus's cameras. [183 at 2.] Argus also obtained a loan from J.P. Morgan Chase; Sequel had priority position over the Argus cameras. [183 at 2.]

Soon thereafter, Argus defaulted on its loans. [183 at 3.] Chase then introduced Pearson to the Graffias, who were officers, directors, and employees of Hartford Computer Group, Inc. [183 at 3, 230 at ¶¶ 1-2.] In June 2003, Pearson assigned Argus's receivables and inventory (including Argus's cameras) to a trustee for the benefit of Argus's creditors. [183 at 3.] The trustee then entered into an agreement with Hartford where Hartford agreed to buy the Argus assets for $2.5 million. [183 at 3.] The trustee and Hartford also entered into a collection agreement where Hartford would collect Argus's existing receivables on a percentage fee basis. [183 at 3.]

An auction of the Argus assets took place on July 15, 2003. [183 at 3.] Sequel alleges that the Graffias and the trustee persuaded it to abstain from bidding and to support Hartford's

---

[2] The Court takes the relevant facts primarily from the parties' Local Rule 56.1 statements and from the Court's opinion on the Graffias' first motion for summary judgment. [See 183, 202, 229, 230.] However, to the extent that the statements do not comply with Local Rule 56.1, the Court has disregarded them. See *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000); see also *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (reaffirming the court's broad discretion to require strict compliance with local rules). Here, Sequel's statement of additional facts [229] is improper. Some facts rely only on the pleadings and others merely assert legal arguments. In addition, one fact impermissibly states that an unsworn affiant is adopting all allegations contained in Sequel's response brief. Sequel's facts also cite to exhibits that lack proper foundation. For these reasons, Sequel's statement of additional facts is almost entirely disregarded. Nevertheless, the Graffias' motion turns largely on the resolution of a legal issue, making Plaintiff's purported facts largely irrelevant.

purchase of the assets. [183 at 3.] Hartford was the sole bidder and purchased Argus's assets for $1.3 million; this amount was immediately tendered to Chase. [183 at 4, 230 at ¶ 7.] Also on July 15, Hartford and Sequel entered into an agreement regarding Argus's debt to Sequel (the "July 2003 Agreement"). [202-1 at Ex. D, 230 at ¶ 8.] The July 2003 Agreement contained, among other things, a formula laying out the payments that Hartford would make to Sequel. [202-1 at Ex. D.]

In the months that followed, Sequel expressed dissatisfaction with the payments that it was receiving from Hartford. [230 at ¶¶ 10-11.] The Graffias, in turn, informed Sequel that (i) returned inventory resulted in additional expenses, (ii) accounts receivables were significantly overstated, and (iii) secured creditors would never receive full recovery. [183 at 5.] Sequel suspected that the Graffias were providing inaccurate information. [230 at ¶ 12.] As a result, in December 2003, Hartford and Sequel "modif[ied]" the July 2003 Agreement, specifically its terms of payment (the "December 2003 Agreement"). [202-1 at Ex. E, 230 at ¶ 13.]

But Sequel continued to disagree with Hartford regarding payment. [230 at ¶ 15.] As a result, in October 2004, Hartford and Sequel agreed to a third arrangement in the form of an Assignment and General Release (the "Release"). [230 at ¶ 16.] The Release provides that the December 2003 Agreement is terminated; instead, Hartford would pay Sequel a lump sum of $505,000. [202-1 at Ex. F.] In return, Sequel agreed to

> release and forever discharge HARTFORD [and its affiliates], (collectively referred to as the "Released Parties") jointly and individually, from any and all claims, actions, causes of action, suits, demands, damages, costs and expenses, which SEQUEL may now have or have in the future have against the Released Parties, whether fixed or contingent, known or unknown, arising out of or the result of any acts, which occurred at any time prior to the date of this [Release], including, without limitation, any and all claims, actions, causes of action, suits demands, damages, costs and expenses, which have been made, or could be made, which arose out of, relate to or result from [the December 2003 Agreement].

[202-1 at Ex. F ¶ 2.] The Release further states that

> [t]he parties executing [the Release] do so freely and voluntarily, solely relying upon their own judgment and that of his or its attorney and not as a result of any fraud, duress or coercion, and are duly authorized to do so. Any prior agreements and/or understandings between the parties, relating to the subject matter contained herein, whether written or oral, which are not expressly set forth herein are void and of no further force or effect.

[202-1 at Ex. F ¶ 8.]

Sequel subsequently filed a second amended complaint, which asserts one fraud count and two RICO counts against the Graffias.[3] [See 1 at 77-96.] In Count II, Sequel alleges that it relied on the Graffias' false statements and omissions regarding Argus's inventory, receivables, and collections in executing the Release. In Count III(A), Sequel alleges that Defendants violated 18 U.S.C. § 1962(c) by fraudulently reselling as new certain used Argus cameras, failing to account for returned inventory, and failing to remit proceeds from the returned cameras. In Count III(B), Sequel alleges that Defendants violated 18 U.S.C. § 1962(d) by conspiring to commit the acts alleged in Count III(A).

The Graffias then filed a motion for summary judgment on Counts III(A) and III(B). [134.] These claims required proof that the Graffias deprived Sequel of property in which it retained a security interest. [183 at 6.] The Graffias, however, argued that, in the July 2003 Agreement, Sequel released its security interest in the cameras. [183 at 8.] The Court agreed with the Graffias that, in the July 2003 Agreement, Sequel released its security interest in the Argus cameras for sale at auction but retained its interest in the Argus accounts receivable. [183 at 8-10.] The Court denied the motion in part, however, because it agreed with Sequel that the Argus accounts receivable possibly included the used Argus camera returned by retailers after

---

[3] The second amended complaint was originally filed in Illinois state court; it was then removed by the Graffias based on federal question jurisdiction. [See 1.] As previously explained, the Court will refer to Sequel's two RICO claims as "Count III(A)" and "Count III(B)." [See 183 at 1.]

the auction that Hartford allegedly resold as new. [183 at 10-12.] For that reason, the Graffias had not shown that Sequel's RICO claims were completely foreclosed. [183 at 12.]

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. And the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S at 252.

**III.    Analysis**

In their second motion for summary judgment, the Graffias argue that the Release precludes Sequel's claims. Regarding Count II, the Graffias contend that they could not have fraudulently induced Sequel to enter into the Release because the Release itself says that the parties were "solely relying upon their own judgment and that of his or its attorney and not as a result of any fraud, duress or coercion." Regarding Counts III(A) and III(B), the Graffias maintain that the Release discharged them from "any and all claims, actions, causes of action, suits, demands, damages, costs and expenses," which include the RICO claims.

In response, Sequel makes two arguments: 1) the Graffias' position is foreclosed by judicial estoppel; and 2) the Release is invalid because it was procured by fraud. The Court will address each argument in turn.

**A.    Judicial Estoppel**

Sequel argues that the Graffias' position in this second motion for summary judgment—that is, that the Release is valid—is inconsistent with its position in its first motion for summary judgment—that is, that the July 2003 Agreement is valid. As a result, Sequel contends that the Graffias' argument is foreclosed by judicial estoppel. See *Bidani v. Lewis*, 675 N.E.2d 647, 650 (Ill. App. Ct. 1996) ("Judicial estoppel provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding."). The Court disagrees.

First, judicial estoppel requires, among other things, that "the two positions must be totally inconsistent." *Id.* Sequel argues that the Release and the July 2003 Agreement cannot both be valid because the Release voids the July 2003 Agreement. Not so. The Release itself

makes no mention of the July 2003 Agreement.[4] The Release does expressly terminate the December 2003 Agreement—indicating that the parties would have expressly terminated the July 2003 Agreement, too, had they so desired—but the December 2003 Agreement only modified the payment terms of the July 2003 Agreement. Nothing in the December 2003 Agreement affected the July 2003 Agreement's terms regarding Sequel's security interest in the cameras, which were at issue in the first motion for summary judgment. Thus, the Graffias' two positions are not inconsistent.

Second, judicial estoppel "applies to statements of fact and not to legal opinions or conclusions." *Maniez v. Citibank, F.S.B.*, 937 N.E.2d 237, 245 (Ill. App. Ct. 2010). Even assuming that Sequel is correct that the Graffias' two positions are totally inconsistent, their assertions amount to legal conclusions on the validity of the two agreements. While the Graffias could have taken both positions in their first motion for summary judgment, there is nothing improper about them proceeding piecemeal. Thus, judicial estoppel is inapplicable.

### B. Validity of the Release

Sequel also argues that, even if the Graffias' position is not estopped, summary judgment is inappropriate based on the Release because the Release was procured by fraud. The Court disagrees. The Release contained a no-reliance clause, stating that the parties were "solely relying upon their own judgment and that of his or its attorney and not as a result of any fraud, duress or coercion." See *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 724 (7th Cir. 2008) (explaining no-reliance clauses and their enforceability under Illinois law); see also *Rissman v. Rissman*, 213 F.3d 381, 384 (7th Cir. 2000) (same). Moreover, Sequel has

---

[4] The Release does, however, provide that "[a]ny prior agreements and/or understandings between the parties * * * are void and of no further force or effect." But as explained in more detail below, this statement relates to the no-reliance clause and is expressly limited to prior agreements "relating to the subject matter contained herein." Thus, this language did not void the unrelated terms of the July 2003 Agreement.

conceded that it believed that the Graffias were providing inaccurate information *before* the Release was executed. Sequel, an admittedly sophisticated party, has put forth no evidence that it meant something other than what it said—namely, that it was not relying on any representations from the Graffias in executing the Release.

Instead, Sequel argues that the Seventh Circuit's no-reliance doctrine does not apply because the Graffias made written misrepresentations as well as oral ones. This argument is not convincing. First, Sequel presents no authority for the proposition that no-reliance clauses apply only to oral misrepresentations even when the clause's express language is not so limited. [See 202-1 at Ex. F ¶ 8 (stating that the parties are "solely relying upon their own judgment" and that "[a]ny prior agreements and/or understandings between the parties * * * *whether written or oral* * * * are void") (emphasis added).] True, the misrepresentations in *Extra* and *Rissman* were oral, but Sequel does not explain why this distinction is material. See *Rissman*, 213 F.3d at 384 (holding that "a written anti-reliance clause precludes any claim of deceit by prior representations").

Second, the only alleged written misrepresentation here is a letter for which Sequel has not laid the proper evidentiary foundation. And third, failing to enforce the no-reliance clause would not give the parties the benefit of their bargain. See *Rissman*, 213 F.3d at 385 ("Contractual language serves its functions only if enforced consistently."). Sequel, a "big boy," see *Extra*, 541 F.3d at 724, came to the table with suspicions about the information that the Graffias were providing. It then expressly warranted that it was relying *only* on its own judgment in executing the Release and that any previous understandings between the parties relating to the Release—whether written or oral—were of no effect. Had Sequel executed the

Release without this language, it may have demanded less consideration from Hartford. Thus, Sequel has not shown that the no-reliance clause should be nullified.

**IV.     Conclusion**

For the reasons stated above, the Graffias' motion for summary judgment [198] on Counts II, III(A), and III(B) is granted. All that remains of Plaintiff's second amended complaint is Count I, a state law claim against Plaintiff's fellow Illinois resident, William Pearson. With federal subject matter jurisdiction lacking, 28 U.S.C. § 1447(c) requires remand. See also *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."). Accordingly, the Clerk is directed to remand this case to the Circuit Court of Cook County.

Dated: July 3, 2012                    _____
                                         Robert M. Dow, Jr.
                                         United States District Judge